IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2019 OCT 21  A 10: 47

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **VIRGINIA HASKEW,** | ) |
| Plaintiff, | ) |
| vs. | ) CAFN: 2:19-CV-795 |
| | ) |
| **FIRST DATA CORPORATION,** | ) |
| n/k/a/ FISERV, d/b/a MONEY NETWORK, | ) |
| | ) **TRIAL BY JURY DEMANDED** |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff Virginia Haskew ("Mrs. Haskew" or "Plaintiff"), and as her Complaint against the Defendant First Data Corporation, n/k/a Fiserv, d/b/a Money Network ("Money Network"), avers as follows:

### PRELIMINARY STATEMENT

This case arises from the failure of Money Network to properly investigate and credit funds fraudulently extracted from Mrs. Haskew's Money Network bank account. Mrs. Haskew's account was compromised on March 31st and between then and April 12, 2019 unknown individuals extracted over $14,000 from her account in a series of overseas purchases, all reflected in the records accessible to Money Network. Mrs. Haskew does not receive written statements from Money Network but instead checks her balance at the end of each week. She discovered the missing funds on April 7th when checking her balance online and she immediately contacted Money Network. Despite that notice, Money Network allowed the fraudulent transactions to continue. Mrs. Haskew called again the following day, and it was only after the second call that Mrs. Haskew was told that the card was deactivated and was provided instructions on reporting

the fraudulent activity. As it turned out, though, Money Network allowed additional fraudulent withdrawals though April 12th. Mrs. Haskew followed Money Network's instructions and provided Money Network with sufficient information establishing that the charges were unauthorized and fraudulent. Money Network responded weeks later with only a short letter stating that the charges would not be credited. No detailed explanation was given. Moreover, Money Network refused to issue a replacement debit card, leaving Mrs. Haskew without any reasonable means to access the funds remaining in her account. Money Network's only offered alternative to issuing a new card was to reactivate the compromised card.

Mrs. Haskew is not responsible for the unauthorized charges to her Money Network account. By failing to provide full credit for those charges and failing to properly investigate, Money Network has violated the federal Electronic Funds Transfer Act 15 U.S.C. §§ 1693 *et seq.* (the "EFTA"). Mrs. Haskew asserts claims under the EFTA for declaratory relief, actual damages, statutory damages, attorneys' fees and costs. She also asserts state law claims all arising under the same set of facts.

## PARTIES

1. Plaintiff is an adult resident of Butler County, Alabama.

2. Defendant First Data Corporation, now known as Fiserv, does business as Money Network and is a foreign corporation with its principal place of business outside the State of Alabama. Defendant is referenced to herein as "Money Network."

## BACKGROUND FACTS

3. Mrs. Haskew works as a greeter at the Walmart Super Center in Greenville, Alabama. She has worked there over eighteen (18) years. When she was hired at Walmart, Plaintiff opened a Money Network account to handle her paycheck. Walmart encourages its employees to open a Money Network account as a convenient way to manage their paychecks.

Walmart directly deposits their employees' weekly pay into their Money Network accounts and they access the account through debit cards issued by Money Network. Plaintiff's Money Network account is identified with an account number ending in 7804. (Hereinafter referred to as the "Money Network Account"). The only deposits made into that account are from Plaintiff's Walmart paychecks.

4. Plaintiff and her husband fund most of their living expenses out of his income. They generally allow the Money Network Account to build up over time, using that money to pay for only a few expenses. This is part of their retirement planning. As of March 30, 2019, Plaintiff's Money Network Account had a balance of $29,063.27.

5. Plaintiff does not receive paper statements for the Money Network Account. At the end of each week she receives an email from Money Network with a link to a webpage showing the account activity for that week. At the end of each week, Plaintiff uses the link in the email to review recent account activity to make sure her paycheck for that week is deposited and to check her balance.

6. On Sunday April 7, 2019, Plaintiff opened the Money Network email and discovered that nearly $14,000 was missing from her account. The transactional history showed numerous overseas withdrawals and purchases beginning March 31st, none of which she authorized or knew about.

7. As soon as she discovered the missing funds, Plaintiff immediately contacted Money Network at the number listed on her debt card and notified the representative that her account had been compromised and that the charges after March 30th were unauthorized. The representative seems unfamiliar with any procedure for reporting fraudulent charges and Plaintiff

was unable to receive any useful information from the representative. Moreover, Defendant failed to take immediate steps to deactivate the card and numerous additional fraudulent transactions took place after Plaintiff's initial call.

8.     The next morning, Plaintiff contacted Money Network again. This time Plaintiff was assured that the card would be suspended immediately, and she was told to provide a detailed list of the unauthorized charges and an explanation of what happened. She was told to file a theft Police Report and to complete a Customer Dispute Form which would be provided by Money Network. She was instructed to email the Police Report, the completed Customer Dispute Form and the list of fraudulent charges to Money Network's Dispute Operations Department. Plaintiff was also told that she would receive a new card. That did not happen.

9.     In the meantime, Plaintiff arranged for all her paychecks to be direct deposited into another bank account.

10.    Although Plaintiff was assured that the card was deactivated, Money Network allowed additional fraudulent withdrawals through April 12, 2019.

11.    On April 18, 2019 Plaintiff filed a Police Report. Later that day, she received the Money Network Customer Dispute Form in the mail.

12.    Plaintiff completed the form, gathered all the relevant information and returned the completed form to Money Network by email on Monday April 26th. Plaintiff attached a list of unauthorized transactions totaling over $14,000. She emailed the Police Report, the completed two (2) page Customer Dispute Form and a detailed list of the fraudulent transactions to the email address found in the instructions of the Customer Dispute Form, exactly as instructed.

13.    Money Network assigned this dispute with 6013 Dispute Case ID –

CMS201904080949443670.

14. On May 1, 2019, Plaintiff received a letter from Money Network notifying her that their investigation discovered no wrongdoing and that they had closed her dispute file. No further explanation was given. Defendant provided no detailed explanation of basis of its decision that Plaintiff was responsible for over $14,000 in fraudulent charges, nor did Money Network identify any additional information needed.

15. At no point during Money Network's "investigation" did anyone from Money Network attempt to contact Plaintiff to provide any further information or ask any questions. At no point did Money Network provide any explanation as to whether any credits would be granted. However, it was apparent from Plaintiff's bank records that approximately $5,000 was recredited to her account representing some of the fraudulent charges which took place after April 6, 2019. Again, no explanation has been provided by Money Network as to why these funds were recredited or any distinction between these unauthorized charges and the unauthorized charges dating back to March 31st, for which no credit was provided. At the same time, the information provided to Defendant included a detailed description of each and every unauthorized charge along with information clearly indicating that the charges were initiated from over-seas.

16. In the meantime, Money Network refused to provide a replacement card to Plaintiff. When Plaintiff called Money Network to ask why she had not received a replacement card, she was told that no replacement card would be provided, but that Money Network could reactivate the previously compromised card. For obvious reasons, Plaintiff declined. That has left Plaintiff with no readily available means to access the approximately $14,000 left in her account. Despite, several requests, Money Network has refused to provide Plaintiff with any means to withdraw or

access those funds that did not involve paying of additional fees by Plaintiff.

17. On September 6, 2019, Plaintiff requested some Money Network checks and approximately a week later received twenty-one (21) checks from Money Network in the mail. Plaintiff has attempted to use the Money Network checks several times with no success.

18. Plaintiff did not receive a replacement card until the first week in October 2019.

## COUNT I
## (VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT)

19. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

20. This is a claim asserted against Defendant for violation of the federal Electronic Funds Transfer Act 15 U.S.C. §§ 1693 *et seq.* (the "EFTA").

21. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1639a(6).

22. Defendant is a "financial institution" as that term is defined in 15 U.S.C. § 1639a(9).

23. The transactions which extracted funds from Plaintiff's Money Network account between March 31st and April 12th 2019 without her knowledge or authority were each "unauthorized electronic transactions" as that term is defined in 15 U.S.C. § 1639a(8) and constitute an "error" within the meaning of 15 U.S.C. § 1693f(f).

24. Plaintiff provided prompt and reasonable notice to Defendant of the unauthorized transactions. Plaintiff's notice constitutes notification of error within the meaning of 15 U.S.C. § 1693f(a).

25. Pursuant 15 U.S.C. § 1693g, Plaintiff is not liable for any of the unauthorized charges or, in the alternative, liable only in the amount of $50.00. She did not initiate, authorize,

know about or benefit from any of the transactions. Moreover, Plaintiff provided sufficient information to Defendant to establish that she was not liable for the unauthorized charges and Defendant has not met and can meet its burden of establishing that the charges were authorized.

26. Defendant has violated the EFTA by failing to provide credit for the unauthorized transactions.

27. Defendant also violated the EFTA by failing to timely and reasonably investigate Plaintiff's notification of error, by failing to provide adequate written response to that notification and by and failing, upon receipt of that notification, to provide credit for the unauthorized electronic transfers as required by 15 U.S.C. § 1693f. Defendant did not conduct any reasonable or good faith investigation and had no reasonable basis for its belief or position that the charges reported by Plaintiff as unauthorized were in fact authorized, valid and not in error.

28. Defendant knowingly and willfully concluded that the charges were authorized and not in error knowing that such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

29. All of the acts and omissions made by Defendant in violation of the EFTA occurred within one year of the filing prior to this action.

30. Money Network's acts and omissions in responding to the unauthorized charged reported by Plaintiff were in accordance with its standard procedure for handling such matters. Money Network has engaged in a pattern and practice of violating the EFTA in responding to reports of unauthorized transactions.

31. As a proximate result of Defendant's violations of the EFTA, Plaintiff has suffered actual damages, including loss of funds, loss of access to funds, mental and emotional pain, fear,

distress and anguish.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

    A.    Actual damages, including damages for mental and emotional pain, distress and anguish, humiliation and embarrassment;

    B.    Statutory damages pursuant to 15 U.S.C. § 1693m;

    C.    Treble damages pursuant to 15 U.S.C. § 1693f(e);

    C.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3); and

    E.    Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT II
## (WANTONNESS)

32.    Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

33.    Defendant's actions taken in connection with Plaintiff's account constitute wantonness. Defendant had a duty by law, including but not limited to the requirements of the EFTA and its implementing regulations, with respect to the management of Plaintiff's account and responding to any report of unauthorized charges. That duty included, but is not limited to, the duty to conduct a reasonable and good faith investigation of the reported fraudulent charges and to provide credit for those charges in the absence of any credible evidence that the charges were in fact authorized. Moreover, Defendant had a duty to act reasonably in immediately deactivating the card and providing Plaintiff with a reasonable and safe means for accessing her remaining funds.

34.     Defendant wantonly failed to perform its duties with respect to Plaintiff's account and her dispute. Defendant's acts and omissions described herein were made in dereliction of its legal duties and with a wanton, reckless or conscious disregard for the Plaintiff's rights and well-being.

35.     Plaintiff has suffered damage as a proximate result of the wantonness of Defendant.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

Respectfully submitted this the 14th day of October, 2019.

_____
KENNETH J. RIEMER (KR0439)
UNDERWOOD & RIEMER, PC
2153 Airport Boulevard
Mobile, AL 36606
Telephone: (251) 432-9212
Facsimile: (251) 990-0626
Email: kriemer@alalaw.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

**First Data Corporation, n/k/a Fiserv,**
**d/b/a Money Network**
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL  36104